IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID PICRAY,                                       Civ. No. 6:11-6147-AA

       Plaintiff,                                OPINION AND ORDER

       v.

CHRIS GRAVES; JOE HEEB; JACK
ROGERS; and ROBERT VU,

       Defendants.

_____

AIKEN, Chief Judge:

      Plaintiff filed suit against defendants alleging violations of his First, Fourth, and Fourteenth

Amendment rights under 42 U.S.C. § 1983, false arrest, and intentional infliction of emotional

distress. Plaintiff has resolved his claims against defendant Heeb, and the remaining defendants

move for summary judgment. The motions are granted.

1    - OPINION AND ORDER

## I. BACKGROUND

Prior to April 30, 2009, plaintiff was an employee of a third-party contractor, GCA Services Group (GCA), at the Oregon State University (OSU) campus. Plaintiff is also an OSU alumnus.

On the evening of April 30, 2009, plaintiff's employment was terminated. After plaintiff was terminated, he waited in the employee parking lot to speak with his previous co-workers as they arrived for their shifts. Plaintiff maintains that he wanted to say goodbye and inform them that he was fired for attempting to protect his co-workers' labor rights.

At approximately 9:30 p.m., the OSU Department of Public Safety dispatch received a call reporting that a recently terminated employee was on the south side of Peavy Hall harassing or menacing his former co-workers. Fletcher Decl. Ex. 1 at 4, 6-9; Graves Aff.; Vu Aff. In addition to the Office of Public Safety, the Oregon State Police (OSP) has responsibility for investigating matters of public safety and potential criminal activity at OSU. Graves Aff. at 2.

OSP Senior Trooper Graves and Recruit Trooper Vu and several other law enforcement officers responded to the call. Fletcher Decl. Ex. 1 at 4, 6-9; Graves Aff.; Vu Aff. When Trooper Vu arrived at the scene he saw two men talking: Joseph Heeb, the GCA representative who terminated plaintiff and called the dispatch center, and plaintiff. Plaintiff was asserting that Heeb was unlawfully "restraining" him by blocking plaintiff's vehicle with his. After Trooper Vu approached, plaintiff began recording the encounter. The following is a certified transcript of the encounter between plaintiff and law enforcement officers:

(Recording begins 00:00)

(Background noise.)

PICRAY: Move your car!

2    - OPINION AND ORDER

JOE HEEB: I'm sorry. I dropped something. I needed to find out what I dropped.

PICRAY: This is illegal kidnapping [sic]. Illegal restraint.

JOE HEEB: I'm sorry, Officer. I dropped something.

PICRAY: You're being tape recorded.

(Background noise.)

PICRAY: You're being tape recorded.

TROOPER VU: Yes, sir.

PICRAY: You're being tape recorded. What's your probable cause for detaining me?

TROOPER VU: We got a complaint against you, sir.

PICRAY: Pardon me?

TROOPER VU: We have a complaint against you, sir.

PICRAY: And what's the complaint?

TROOPER VU: Sir, I need to see your –

PICRAY: What's the nature of the complaint? You have no probable cause to detain me.

ANOTHER TROOPER: Trying to find out reason, we can detain you. We're asking -

PICRAY: What am I doing?

ANOTHER TROOPER: – to find out why – what's going on. We got called over here. We had – somebody had – had been – had their job – Did you get fired today?

PICRAY: Yes.

ANOTHER TROOPER: Okay. And that there was a hostile employee that had got fired today, refusing to leave.

PICRAY: No one -

3     - OPINION AND ORDER

ANOTHER TROOPER: That's what we got called about.

PICRAY: No, no one told me I had to leave. And I – No one has a right to tell me to leave this campus. And you don't have a right to talk to me. So I'm leaving.

(Background radio playing.)

PICRAY: You have no legal right to detain me!

TROOPER VU: Sir, I smell alcohol on your breath.

PICRAY: I'm in a public place!

TROOPER VU: Sir, you just put your car into gear, you're in a car, I smell alcohol on your breath.

PICRAY: No, you don't! You're lying! You're absolutely lying!

TROOPER VU: You're telling me what I am thinking?

PICRAY: You're absolutely lying!

TROOPER VU: Sir, I do smell alcohol on your breath. Sir, can you exit the car, please.

ANOTHER TROOPER: Are you going to shut it off for me, sir. Set the keys up on the dash.

Thank you. I appreciate that.

PICRAY: It takes four of you? I want names. V-U. What's your name?

SERGEANT SCHLEICHER: Sir, why don't you deal with Trooper Vu right now.

PICRAY: Snek – Snek – How do you pronounce that?

SERGEANT SCHLEICHER:. Sir, why don't you deal with Trooper Vu right now.

PICRAY: No. I'm getting names because you guys are violating my Fourth Amendment rights.

Graves and –

4    - OPINION AND ORDER

TROOPER GRAVES: I'm Trooper Graves.

PICRAY: Graves.

ANOTHER TROOPER: This is your priority trooper. Talk with him.

PICRAY: Johnson?

TROOPER VU: Talk to me.

PICRAY: You're violating my Fourth Amendment rights.

TROOPER VU: Okay.

PICRAY: You're detaining me without probable cause.

TROOPER VU: Actually, I do have probable cause.

PICRAY: What?

TROOPER VU: I smell alcohol on your breath.

PICRAY: No, you don't. You're lying!

TROOPER VU: No, I'm not.

PICRAY: You just made that up because –

TROOPER VU: Sir -

PICRAY:  –  you want an excuse – Right there is the man who's gonna be a co-defendant with you.

ANOTHER TROOPER: You have some – you have a – You have some identification?

TROOPER VU: I need some identification, sir.

PICRAY: It's in my car.

SERGEANT SCHLEICHER: Sir, can I get it for you?

PICRAY: No.

5    - OPINION AND ORDER

SERGEANT SCHLEICHER: Why not? I'm a little concerned –

PICRAY: Because you do not have a warrant to search my car.

SERGEANT SCHLEICHER: Okay.  That's not what I'm talking about.  I just want to get your ID.

PICRAY: Then you don't need my ID.

SERGEANT SCHLEICHER: Okay.

PICRAY: You – Mine – I'll – I –

SERGEANT SCHLEICHER: I'm a little concerned because –

PICRAY: I only have to tell you my name.

SERGEANT SCHLEICHER: Okay.

PICRAY: I know my rights!

SERGEANT SCHLEICHER: Why don't you verbally tell Trooper Vu your name, then.

PICRAY: David Picray.

TROOPER VU: Excellent. Do you have a middle initial, sir?

PICRAY: E.

TROOPER VU: And –

ANOTHER TROOPER: Just to let you guys all know, he is recording.

PICRAY: You're all being recorded.

TROOPER VU: Yes, sir. Could I get the spelling of your last name, sir?

PICRAY: P-I-C-R-A-Y.

TROOPER VU: P-I-C-R-A-Y. Could I have your date of birth, sir?

PICRAY: 3/22/49.

6    - OPINION AND ORDER

TROOPER VU: Can you hold on for a moment here, sir? Sir?

PICRAY: Pardon me?

TROOPER VU: I need you to stay right there. (Inaudible.)

PICRAY: Speak up.

(Background sound.)

TROOPER VU: Sir, have you had anything to drink tonight?

PICRAY: I told you that already. Let's get the test done! Let's do the test. Bring the breathalyzer out.

TROOPER VU: Can you repeat for me whether you've been drinking or not. I didn't catch that, sir.

PICRAY: I said no, I have not been drinking. And I said you're a liar that you smell alcohol.

TROOPER VU: I do smell alcohol, sir.

PICRAY: No, you don't.

TROOPER VU: All right, sir.

                              ***

PICRAY: You're the sergeant?

SERGEANT SCHLEICHER: Yes, sir.

PICRAY: And how do you pronounce your name?

SERGEANT SCHLEICHER: Schleicher.

PICRAY: Schleicher?

TROOPER VU: Sir, I need to inform you that you are being recorded on a video and audio at this point.

PICRAY: Good.

7    - OPINION AND ORDER

TROOPER VU: Okay. Sir, what seems to be the problem? Obviously there's been some kind of argument or altercation between the gentleman that was here and yourself.

PICRAY: I can't hear you. Will you speak up, please.

TROOPER VU: I think I did (inaudible).

PICRAY: Huh?

TROOPER VU: Sir, what seems to be the problem with you tonight? You seem to have been in an altercation of some sort with the gentleman here, that was here, standing over there.

Sir, are you refusing to answer me?

PICRAY: Am I under arrest?

TROOPER VU: I'm just questioning you right now, sir.

PICRAY: I'm exercising my Fifth Amendment right.

ANOTHER TROOPER: So are you refusing to talk to us?

PICRAY: Yeah, I'm refusing to talk to you. I've provided you my identity. You have no legal right to talk to me at all. I'm in a public place.

ANOTHER TROOPER: You're in a public place, yes.

PICRAY: Huh?

ANOTHER TROOPER: But when we get a call for menacing and harassment, we've got to find out what's going on, we're going to do an investigation, yes.

PICRAY: You had a charge of menacing and harassment?

ANOTHER TROOPER: I said – I didn't say I charged you with that. I said we're doing an investigation. Okay?

PICRAY: Who – who – Did someone call you and say –

ANOTHER TROOPER: So, yes, they did.

8     - OPINION AND ORDER

PICRAY: – I was menacing and harassing?

ANOTHER TROOPER: Somebody called us, and we're doing an investigation right now.

PICRAY: And who did that?

ANOTHER TROOPER: I don't know yet. We're finding out. That's what the other troops are working on. So I'm letting you know –

PICRAY: That's a false charge, and I want –

ANOTHER TROOPER: I did not say that you're –

PICRAY: – I want charges pressed against them –

ANOTHER TROOPER: Can you be quiet for just one moment, sir?

PICRAY: – for making a false charge.

ANOTHER TROOPER: Hey. Listen. Listen. I didn't charge you with anything. I said we are doing an investigation to determine what's going on. Okay?

PICRAY: Okay. And I'm saying that whoever called you and accused me of menacing and harassment made a false report.

ANOTHER TROOPER: Okay.

PICRAY: And I want them prosecuted for that. I was fired. I came in here to say good-bye to my friends, the people I supervise, and whose rights I stood up for. Last night I told my manager that I would not violate the law. I was told to make people work off the clock. I told him I will not violate the law. I discussed it for two hours this morning in the office of Mr. Heeb, the man who called you, and I was fired tonight.

So that's the – that's the crux of it.

ANOTHER TROOPER: Okay.

PICRAY: I violate – I stood up for the rights of the people I supervise, and I refused to break the law and violate their rights as employees. And that's why I've been fired. I came to say good-bye to them, to tell them that I was fired. And I did nothing whatsoever to deserve this scrutiny.

9    - OPINION AND ORDER

ANOTHER TROOPER: Okay. All of a –

PICRAY: You violated my Fourth Amendment rights.

ANOTHER TROOPER: Can I talk?

PICRAY: Go ahead. You can – You seem to be in charge. You got four guns here.

SERGEANT SCHLEICHER: So this is something we are investigating. Okay? At this point you're the one who's being unreasonable with us.

PICRAY: No, I'm not being unreasonable!

SERGEANT SCHLEICHER: You're –

PICRAY: I have Fourth Amendment rights. *State vs. Haw* gives me the right not to even talk to you.

SERGEANT SCHLEICHER: Okay. Well, at this point you're not even letting us get an opportunity to talk to you.

PICRAY: Well, because I don't have to talk to you.

SERGEANT SCHLEICHER: Okay. Then –

PICRAY: You don't have probable cause –

SERGEANT SCHLEICHER: – don't anymore, sir.

PICRAY: -- to even talk to me.

SERGEANT SCHLEICHER: (inaudible) talk anymore, then. At this point all you need to know is we are – have you detained. Okay? For our investigation into a criminal event. Until we resolve that investigation, you're not free to go.

Okay. So we're just not even talking to you until we get an opportunity to talk to the other half. Okay?

PICRAY: Wel[l], this is an illegal detention. This amounts to a false arrest, and you will be held accountable.

I know my rights. They don't know the law, and they won't follow the law. You need to find out who the bad guy is here.

10    - OPINION AND ORDER

SERGEANT SCHLEICHER: That's what we're trying to do, sir.

PICRAY: And I have proof of crimes by that man right there.

TROOPER GRAVES: Okay.

PICRAY: And I will bring them to the attention of the Attorney General or the DA or someone.

SERGEANT SCHLEICHER: Okay. That's fine.

PICRAY: And that's why they don't like me, because I know too much and that I won't compromise.

SERGEANT SCHLEICHER: Okay.

TROOPER VU: So you say that you were actually here very legally, and you just came to say good-bye?

PICRAY: Yeah. What's wrong with that?

TROOPER VU: Nothing –

PICRAY: I'm an alumnus of OSU. I'm a citizen of Oregon. This is a public place. I have every right in the world to be here. He has no right whatsoever to exclude me or to make false charges. I didn't enter a building.

TROOPER VU: Oh, you didn't go inside?

PICRAY: No.

TROOPER VU: Oh, okay.

PICRAY: Absolutely not.

TROOPER VU: Well, what time did you get here, sir?

PICRAY: Oh, I don't know. About a little after 9:00.

TROOPER VU: A little after 9:00? Okay.

ANOTHER TROOPER: Drive over here?

11    - OPINION AND ORDER

PICRAY: Huh?

ANOTHER TROOPER: Drive over here?

PICRAY: Yeah.

ANOTHER TROOPER: Okay.

PICRAY: And I called your office this afternoon, by the way.

ANOTHER TROOPER: Okay.

PICRAY: To inform someone that at about 5:10, 5:15 or so, I was hoping to talk to your lieutenant to inform him that I suspected that I might be charged with a crime in order to set me up for termination. Because I have access to buildings, and I was anticipating – call it paranoid if you want, but I was anticipating being accused of theft or something. So I wanted to give you guys a heads up.

SERGEANT SCHLEICHER: What do you think they were going to – What type of theft were they going to accuse you of?

PICRAY: I didn't know. I just – And I'm not paranoid. I just – I just was trying to cover myself so that, you know, if you were contacted, that you would maybe consider the source, or I don't know.

SERGEANT SCHLEICHER: Okay.

PICRAY: I mean, I realize that you'd have to investigate.

TROOPER VU: Uh-huh. Did you get –

PICRAY: But –

TROOPER VU: – an opportunity to say good-bye to your friends, then?

PICRAY: Yeah.

TROOPER VU: Okay.

PICRAY: Most of them.

TROOPER VU: So they came outside to meet you?

PICRAY: No. They were on their way into the building and they stopped and talked to me. I didn't hold anyone down. I didn't coerce anyone. I didn't menace anyone. TROOPER VU: All right. That sounds good. So about what time – How long ago were you confronted by this other gentleman?

PICRAY: Which other gentleman?

TROOPER VU: The one that had the car parked behind you.

PICRAY: About 15 minutes ago. Because that's when I started my tape, my recording.

TROOPER VU: Okay. So that's –

PICRAY: No. No. Actually it was around 9:30, because 9:30 is when they all went in to punch in.

TROOPER VU: I see.

PICRAY: And he pulled up and he parked – he parked down there, not in the spot, but just in the middle next to me. And then when I walked up here – because they all went inside to punch in.

TROOPER VU: I see.

PICRAY: So I was intending to leave. Well, he backed up the driveway and followed me. And I got in my car and I put it in reverse, and I almost backed into him, and I saw that he was behind me. And that's when he got out and he said he dropped something. He lied to you. He committed an illegal detention, a kidnapping [sic], if you will, because he prevented me from leaving.

ANOTHER TROOPER: This is a public parking lot, you said –

PICRAY: No! He stopped and prevented me –

ANOTHER TROOPER: – you said this is a public parking lot.

PICRAY: – from leaving. And I have a photo of it.

ANOTHER TROOPER: But you said this is a public parking lot, right? You said that yourself? This is a public parking lot?

PICRAY: Stop, stop, stop it. Stop it.

13    - OPINION AND ORDER

ANOTHER TROOPER: I'm asking you –

PICRAY: Stop it!

ANOTHER TROOPER: – a question.

PICRAY: Stop playing games.

ANOTHER TROOPER: I'm asking you a question.

PICRAY: He blocked me from leaving.

ANOTHER TROOPER: I'm asking you a question –

PICRAY: He had no right to –

ANOTHER TROOPER: –  yes or no, is this a public parking lot?

PICRAY: – he had no right – You know – Do you work here on campus?

ANOTHER TROOPER: Absolutely. I've been working here ten years.

PICRAY: Do you know if this is a public parking lot? Do you know if this is a public parking lot or not?

ANOTHER TROOPER: I asked you a question, if you said it was a public parking lot.

PICRAY: Well, I'm refusing to answer a stupid question.

ANOTHER TROOPER: All right. Fair enough.

PICRAY: Fair enough? Then don't ask stupid questions. Don't harass me! I know my rights! And I'm not intimidated by you!

ANOTHER TROOPER: Great.

PICRAY: And your guns!

ANOTHER TROOPER: Great.

PICRAY: So knock it off! Let's be civil here, if we're going to resolve this situation. He committed a crime by illegally preventing me from leaving. And I want that

14    - OPINION AND ORDER

investigated. And I have a photo.

ANOTHER TROOPER: Outstanding.

SERGEANT SCHLEICHER: Is that on your camera right on the center console?

(No response.)

SERGEANT SCHLEICHER: Is that on your camera on the center console? I'm trying to –

PICRAY: You don't have a –

SERGEANT SCHLEICHER: – investigate it –

PICRAY: You don't have a warrant to search my camera. You don't have a warrant to put your hand in that truck.

SERGEANT SCHLEICHER: Sir, did I ask to put my hand in your truck –

PICRAY: No.

SERGEANT SCHLEICHER: – for the camera?

PICRAY: You're asking about evidence of a crime, though.

SERGEANT SCHLEICHER: Okay. You were presenting the picture as evidence –

PICRAY: Okay.

SERGEANT SCHLEICHER: – of your supposed crime. Okay? I simply asked –

PICRAY: You want in that truck, or anything in that truck, including a camera, you need to get a warrant.

SERGEANT SCHLEICHER: Okay. So you don't want me looking at evidence of the crime that you're reporting?

PICRAY: Not at this time. I'll –

SERGEANT SCHLEICHER: Okay.

PICRAY: If I want to share that with you, I will.

15   - OPINION AND ORDER

SERGEANT SCHLEICHER: Okay.

(Pause.)

PICRAY: What are we waiting for?

ANOTHER TROOPER: Troop's talking to some other people.

You take any kind of medications at all, sir?

PICRAY: None of your business. That's my personal medical records, you have no right to ask that question.

I said stop the games!

ANOTHER TROOPER: I'm not playing a game.

PICRAY: Yeah.

ANOTHER TROOPER: Any.

PICRAY: Yeah.

ANOTHER TROOPER: I asked you a simple question. Because your demeanor is a little bit different than somebody who – Hey, you're –

PICRAY: All right. I refuse –

ANOTHER TROOPER: – worked way up.

PICRAY: – I refuse to answer.
(Pause.)

PICRAY: What, are we gonna stare now?

ANOTHER TROOPER: Just standing here.

PICRAY: I can stare just as long as you can. You think I'm afraid of you?

ANOTHER TROOPER: Did I ask you a question if you were?

PICRAY: Risk Management, Ferry Street, Salem, Oregon. They'll be getting a letter Monday.

16    - OPINION AND ORDER

(Pause.)

PICRAY: You're blocking your camera.

ANOTHER TROOPER: You want to be on camera? There you go.

PICRAY: You want me to dance or something for you? You want entertainment? You want to put that on police videos or something?

You know, you guys wouldn't respond when I reported a cash box broken into right here in Richardson Hall. You wouldn't get off your asses and come over and investigate when there was currency laying there. But yet now you'll come out and harass me —

ANOTHER TROOPE[R]: I'm not —

PICRAY: — for no reason. Four of you.

(Pause.)

PICRAY: I called in a — a crime, and you guys wouldn't even respond. You won't even get off your asses and prevent all these car clouts (phonetic) on campus. You drive around where everyone can see you drive by and hide.

ANOTHER TROOPER: We've probably arrested five people for (inaudible) in the last two months. Yeah—

PICRAY: Yeah, you got —

ANOTHER TROOPER: — we're just sitting around doing nothing.

PICRAY: — you got lucky. Top-notch police work. You forget where I work. Right next door to you. I know when you're in your office and when you're out patrolling. And why can't you guys park in the parking space over there?

(Pause.)

PICRAY: What? You got a problem with that?

SERGEANT SCHLEICHER: I don't understand, sir. There's no need —

PICRAY: Well, you're blocking —

17    - OPINION AND ORDER

SERGEANT SCHLEICHER: – for you to antagonize a trooper's trust. You know, you're going to have a –

PICRAY: Well, then let me go home.

SERGEANT SCHLEICHER: And, sir, unfortunately at this point, no. But there's no need for us to be sitting here crowing negative remarks towards each other.

PICRAY: Well, then tell him to stop asking stupid questions.

SERGEANT SCHLEICHER: Okay. My (inaudible) are very pertinent questions. So...But there's no need for none of us to throw negative comments towards each other. Okay?

(Pause.)

PICRAY: So, what about this alcohol? You still smell alcohol? Where's the – You want to do the sobriety test? I want the – I want the breathalyzer. You claim to smell alcohol. I want a breathalyzer.

ANOTHER TROOPER: We can give you a chance to take some field sobriety tests if you'd like.

PICRAY: I want a breathalyzer, not a sobriety – not a field –

SERGEANT SCHLEICHER: Sir, we don't offer a breathalyzer test –

PICRAY: – not on a –

SERGEANT SCHLEICHER: – in a DUI investigation. Okay?

PICRAY: Huh? Not a -- not a subjective field sobriety test. I want a breathalyzer.

ANOTHER TROOPER: Okay. We don't offer a breathalyzer out in the field.

PICRAY: You don't offer it?

ANOTHER TROOPER: No. Not on –

PICRAY: You're concerned about alcohol on my breath. Why aren't you doing any tests?

TROOPER GRAVES: Sir, you're not a –

18    - OPINION AND ORDER

PICRAY: Why in 20 minutes haven't you done one single test for alcohol? You've asked me other questions not related to alcohol consumption. It's going to be a little bit of a problem for you in court, isn't it?

SERGEANT SCHLEICHER: Go ahead.

PICRAY: Huh?

TROOPER VU: Are you willing to take a –

PICRAY: No.

TROOPER VU: – standardized field sobriety test?

PICRAY: No: I want a breathalyzer.

TROOPER VU: Well, we have a problem with this. The – For a DUI investigation, we would have to go to the North Dallas testing area and toxicology. In Corvallis, we don't have one. It's only located at the Benton County correction facility.

PICRAY: No. Corvallis police have a portable unit. Because I –

TROOPER VU: That isn't up –

PICRAY: – I've been – I've been forced to use – blow into it before.

ANOTHER TROOPER: .You've been forced?

PICRAY: Yeah, forced. Yeah.

TROOPER VU: Potentially the portable unit is completely inadmissible for a DUI investigation. It can detect whether you have alcohol ... (inaudible).

PICRAY: I can – I can't even hear what you're saying. If you're going to communicate with the public, I think you need to work on your delivery there.

TROOPER VU: Sir, if I raised my –

PICRAY: I realize you're a rookie trooper.

TROOPER VU: – voice, then you would probably –

PICRAY: I'm not saying raise your voice.

19    - OPINION AND ORDER

TROOPER VU: – complain.

PICRAY: I'm saying speak clearly and sufficiently.

ANOTHER TROOPER: He is speaking clearly.

PICRAY: No.

ANOTHER TROOPER: Yes, he is.

PICRAY: I can't hear him!

ANOTHER TROOPER: Okay. That would mean raising his voice. Which if he raises his voice, then you raise your voice, and then you think we're yelling at you.

TROOPER VU: I'm just trying to keep it in a calm manner, sir.

PICRAY: How would you feel if your civil rights were violated? Not only are you fired and humiliated, your civil rights are violated and you're illegally detained. You're – you're – Based on false accusations.

TROOPER VU: Well, we're trying to determine that right now, sir. And once we clear everything up, if they are false, then –

PICRAY: And then I'm pressing charges on that.

SERGEANT SCHLEICHER: You'll have a right to file a (inaudible).

Yeah, okay. I'll read it.

PICRAY: You have business cards?

SERGEANT SCHLEICHER: Absolutely, sir.

PICRAY: Can I have one?

SERGEANT SCHLEICHER: Absolutely.

ANOTHER TROOPER: You do a lot of – do a lot of elk hunting?

SERGEANT SCHLEICHER: There you are.

PICRAY: How about you?

20    - OPINION AND ORDER

ANOTHER TROOPER: I'll write my name on there. I don't have any with me. If you don't mind.

PICRAY: No, I don't mind.

You?

TROOPER VU: Unfortunately I don't have any business cards yet, sir.

PICRAY: Didn't get them printed yet?

TROOPER VU: No, not yet.

(Pause.)

PICRAY: This guy is a – Well ... I'll stop there.

ANOTHER TROOPER: I already wrote everybody else's name on there. I already got your name on there.

TROOPER VU: Oh, okay.

ANOTHER TROOPER: Everybody else's names. Everybody who's here. The only reason I asked you the question if you like to hunt elk, is because your license plate.

PICRAY: Would you like to read a magazine? Maybe – maybe you won't be bored and asking stupid questions. Obviously you're bored.

SERGEANT SCHLEICHER: Sir, again –

PICRAY: Huh?

SERGEANT SCHLEICHER: – that's a conversation that's leading nowhere.

PICRAY: Well ...

SERGEANT SCHLEICHER: Okay?

PICRAY: I'd like to go home.

SERGEANT SCHLEICHER: I understand that.

PICRAY: I'm under arrest.

21    - OPINION AND ORDER

SERGEANT SCHLEICHER: What's that?

PICRAY: I'm under arrest, and I'd like to go home.

SERGEANT SCHLEICHER: You're not under arrest.

PICRAY: Yes, yes, I am.

SERGEANT SCHLEICHER: You're not free to go.

PICRAY: That's – that's false arrest. *Terry vs. Ohio* only gives you the right to briefly detain me for an investigatory stop.

SERGEANT SCHLEICHER: Okay.

PICRAY: You're claiming that you smelled alcohol. You've done no – no investigation whatsoever for alcohol use. And you've asked me questions related to my employment.

ANOTHER TROOPER: And I asked you if you'd do some voluntary field sobriety tests, and you said no.

PICRAY: Correct. But that's after I brought up my request for a breathalyzer.

ANOTHER TROOPER: I would not do one –

PICRAY: To prove that –

ANOTHER TROOPER: – even if you said yes.

PICRAY: To prove that your reason for detaining me is bogus.

(Pause.)

TROOPER VU: How long did you work here, sir?

PICRAY: Pardon me?

TROOPER VU: How long did you work for the OSU campus?

PICRAY: Pardon me?

TROOPER VU: How long did you work for the OSU campus?

22   - OPINION AND ORDER

PICRAY: Ten months.

TROOPER VU: Ten months.

(Pause.)

TROOPER VU: So what is your – what precisely was your job function, sir?

PICRAY: Supervisor.

TROOPER VU: Supervisor for?

PICRAY: GCA, custodial supervisor.

Crowley Aff. Ex. 2 at 2-23.

While Trooper Vu and others attempted to interview plaintiff, Trooper Graves talked to several GCA employees that plaintiff had contacted as they arrived for work. Graves Aff. at 2, Ex. 5. William Schumacher told Trooper Graves that plaintiff confronted him and accused him of causing plaintiff's termination. Id. Ex. 5. Mr. Schumacher stated that he was uncomfortable with plaintiff's conduct and accusations. Another employee, Thomas Russel, reported that plaintiff also approached him and expressed displeasure and "vented" about his termination. Id. Ex. 5 at 2. Mr. Russel observed that plaintiff was getting more and more aggressive as he talked. Yet another GCA employee, Cole Mattis, said that when he arrived at work plaintiff approached his vehicle and stood at the door. Id. Mr. Mattis was not sure whether plaintiff was going to let him exit his car. Plaintiff demanded that Mr. Mattis provide his phone number so that plaintiff could contact him regarding the termination. Plaintiff said he was going to obtain the names and phone numbers of all GCA employees so that he could tell them not to trust GCA managers. Mr. Mattis told officers that he felt intimidated by plaintiff's conduct. Id.

Trooper Graves consulted with other officers at the scene and determined that plaintiff's

23    - OPINION AND ORDER

actions did not warrant arrest. However, Trooper Graves believed that plaintiff should be excluded

from the campus for disrupting GCA employees. Graves Aff. at 3. Sergeant Schleicher and Officer

Robert Vail issued plaintiff an exclusion notice for "Disrupting the Work Environment." Fletcher

Decl. Ex. 1 at 1, Exs. 2-3. The following is a certified transcript of the encounter between plaintiff

and law enforcement officers when he received the Exclusion Notice and was escorted off campus:

> SERGEANT SCHLEICHER: Okay. Sir, what we're going to do, okay. No crime's
> been committed, but you have disrupted the work – work environment here. And so–
>
> PICRAY: No, I don't think so.
>
> SERGEANT SCHLEICHER: Okay. Well, that – that's for us to disagree on. So what
> we're going to do is we're going to exclude you from Oregon State University all of
> campus.
>
> PICRAY: You don't have a legal right to do that.
>
> SERGEANT SCHLEICHER: Okay. And that's a matter you can bring up with
> Director Rogers, Department of Public Safety.
>
> PICRAY: I'll bring it up to the circuit court, I suppose.
>
> SERGEANT SCHLEICHER: Well, it wouldn't go through circuit court, but it will
> be a matter –
>
> PICRAY: Who's excluding me?
>
> SERGEANT SCHLEICHER: I am, right here. Okay?
>
> PICRAY: For?
>
> SERGEANT SCHLEICHER: For disrupting the work environment here at Oregon
> State University. Okay?
>
> Now –
>
> PICRAY: And based on what?
>
> SERGEANT SCHLEICHER: – if you – if you so choose, you know, want to try to

24    - OPINION AND ORDER

gain employment back here or come here for a function, you can contact Director Rogers and look into having that exclusion lifted. Okay?

But under the –

PICRAY: Now –

SERGEANT SCHLEICHER: – exclusion, if you were to come back to Oregon – Go ahead and provide him with information, please.

PICRAY: What's your name?

SERGEANT SCHLEICHER: Officer Vail.

OFFICER VAIL: Officer Vail.

SERGEANT SCHLEICHER: V-A-I-L. Okay?

OFFICER VAIL: What's your address, sir?

PICRAY: I'm not sure that I have to provide that. Do I?

(33:04 Trooper requesting address via radio.)

TROOPER VU: Sir, do you have a phone number?

PICRAY: Pardon me? I can't...

TROOPER VU: Do you have a phone number?

PICRAY: Yeah.

TROOPER VU: Are you willing to give it to us?

PICRAY: It's nonpublished.

SERGEANT SCHLEICHER: Are you willing –

PICRAY: Are you gonna call me?

SERGEANT SCHLEICHER: – to give it to us?

PICRAY: Huh?

SERGEANT SCHLEICHER: Are you willing to give it to us?

PICRAY: You want to call me?

SERGEANT SCHLEICHER: No. It's for the form, sir.

PICRAY: Nonpublished. You don't get it.

(Pause.)

PICRAY: Tried to help you guys out.

***

ANOTHER TROOPER: How did you pronounce your last name again, sir? Pic- -- Pic-a-rel?

TROOPER VU: Pic-ray, I think it was.

ANOTHER TROOPER: Pic-ray?

TROOPER VU: It's P-I-C-R-A-Y.

ANOTHER TROOPER: Sir, am I pronouncing that correctly? Pic-ray?

TROOPER VU: Sir, we just want to be courteous and pronounce your name correctly.

PICRAY: You what?

TROOPER VU: We just want to be courteous and pronounce your name correctly.

PICRAY: If you were courteous, you would've left me go – left me alone. You would've respected my constitutional rights.

TROOPER VU: Is it Pic-ray?

PICRAY: I'm being fired for obeying the law, for respecting the legal rights of my subordinates.

TROOPER VU: You were fired –

PICRAY: And I –

26   - OPINION AND ORDER

TROOPER VU: – for that, sir?

PICRAY: Yes. And are you happy that you're a part of this?

ANOTHER TROOPER: I don't think we were a part of that.

SERGEANT SCHLEICHER: Sir, this is the exclusion notice that says that you are hereby excluded from the Oregon State University campus and any Oregon State University controlled property. Served on to you today. And it will be revoked – can be revoked by the Director of Public Safety. On the back here is a way you can appeal that and have that revoked.

Do you have any questions for me sir?

PICRAY: Will you stop flashing that camera in my face?

SERGEANT SCHLEICHER: Okay. He's done taking photographs.

So, now, if you come back onto campus while that's active, you will be arrested for Criminal Trespass II.

PICRAY: Yeah.

SERGEANT SCHLEICHER: Okay?

PICRAY: And that will be a false arrest –

SERGEANT SCHLEICHER: Okay.

PICRAY: – because this is not valid.

SERGEANT SCHLEICHER: That's fine, sir.

PICRAY: Okay.

SERGEANT SCHLEICHER: So –

PICRAY: And then I can go before a judge.

SERGEANT SCHLEICHER: Great, sir.

Now, you're free to go.

PICRAY: Oh, thank you.

SERGEANT SCHLEICHER: Okay. I'm going to escort you off campus. Which way are you going to go? Are you going to go south or north?

PICRAY: I'll decide that when I'm ready to.

SERGEANT SCHLEICHER: Okay, sir. Well, at this time I'm asking you to leave, sir, so we don't have to arrest you for criminal trespass. And I will follow you off campus to make sure you saw your way safely off campus. Okay?

Any other questions for me, sir?

OFFICER VAIL: Sergeant, did you tell him the boundaries?

SERGEANT SCHLEICHER: Tell him the boundaries.

OFFICER VAIL: Sir? Sir?

SERGEANT SCHLEICHER: Just tell him.

OFFICER VAIL: Okay. You cannot come in between Monroe and Washington, and 35th and 15th. Do you understand?

(Recording ends 39:41.)

Crowley Aff. Ex. 2 at 23-29.

The Exclusion Notice was issued pursuant to OSU Department of Public Safety Policy and

Procedure, Policy # 200.03 that states:

Oregon State University Department of Public Safety will issue an "Exclusion Notice" to individuals whose behavior is criminal or significantly disruptive to the educational, research, and public service goals of the University. The Notices are issued as a means of intervention to direct unwanted persons from specific areas of the campus or from the entire campus and to provide protection, safety and security for the welfare of students, faculty, staff and guests of the University.

Fletcher Decl. Ex. 2 at 1 (the Policy). Under the Policy, an exclusion notice may be appealed within

five days of the date of issuance to the Director of Public Safety. Id. Ex. 2 at 3-4. "A reply to the

28    - OPINION AND ORDER

appeal will be sent by certified mail to the violator." Id. Ex. 2 at 4.

On May 1, 2009, plaintiff timely appealed the Exclusion Notice to Jack Rogers, OSU's Director of Public Safety. Fletcher Decl. Ex. 4. In the appeal, plaintiff indicated that he would like to speak with Rogers about the circumstances surrounding the issuance of the Exclusion Notice. Fletcher Decl. Ex. 4 at 2. Rogers attempted to make contact with plaintiff to discuss the appeal but states that his e-mails and telephone messages were not acknowledged or returned. Id. Ex. 5.

On May 26, 2009, Rogers denied plaintiff's appeal. Id. In Rogers's Decision Letter, he stated that: (1) he "reviewed the official reports submitted by members of the Oregon State Police and the Department of Public Safety" and that the reports "support the issuance of this Exclusion Notice"; and (2) the Exclusion Notice would "remain in place until further notice." Id.

Plaintiff did not file an action pursuant to the Oregon APA challenging the validity of the Exclusion Notice or Rogers' Decision Letter. Fletcher Decl. ¶8; see Or. Rev. Stat. § 183.480.

On April 29, 2011, plaintiff filed suit against Troopers Graves and Vu, Heeb, and Rogers. Plaintiff has resolved his claims against Heeb.

## II. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material

29    - OPINION AND ORDER

fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630. Nevertheless, the Ninth Circuit has refused to find a genuine issue of fact where the only evidence presented is "uncorroborated and self-serving" testimony. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

## III. DISCUSSION

Plaintiff alleges that Graves and Vu violated his rights against unlawful seizure and false arrest as well as his rights to free speech. Plaintiff alleges that Rogers violated his free speech and due process rights and committed the tort of intentional infliction of emotional distress. Graves, Vu, and Rogers move for summary judgment, arguing that no genuine issue of material fact precludes judgment in their favor. I agree.

### A. Defendants Graves and Vu

#### 1. Unlawful Seizure and False Arrest Claims

Plaintiff alleges that Troopers Graves and Vu "arrested [him] absent a warrant or probable cause" and "intentionally seized and confined" him. Compl. at ¶¶ 8, 12. However, it is undisputed that plaintiff was not arrested; rather, he was detained as Troopers Graves and Vu investigated the harassment complaint. Thus, the issue is whether reasonable suspicion existed to support plaintiff's

detention. <u>Ramirez v. City of Buena Park</u>, 560 F.3d 1012, 1020 (9th Cir.2009) (for investigatory stops "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion"); <u>Denucci v. Henningsen</u>, 248 Or. App. 59, 67, 273 P.3d 148 (2012) (elements of false arrest include unlawful confinement); <u>see also</u> Or. Rev. Stat. § 131.615 (requirements for investigative detentions).

It is undisputed that the troopers responded to a dispatch call reporting that a recently-fired employee was harassing and/or menacing former co-workers. <u>See</u> Fletcher Decl. Ex. 1. Plaintiff was at the location of the alleged disturbance, he admitted being recently fired, and he was agitated, or as one officer stated, "worked up." Thus, Troopers Graves and Vu had reasonable suspicion to detain plaintiff while investigating potential charges of harassment or menacing.[1] <u>Hayes v. Florida</u>, 470 U.S. 811, 816 (1985) ("[I]f there are articulable facts supporting a reasonable suspicion that a person has committed a criminal offense, that person may be stopped in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information."); <u>Ramirez</u>, 560 F.3d at 1021.

Nonetheless, plaintiff argues that his detention exceeded the scope of a legitimate investigatory stop, in that it lasted almost forty-five minutes. <u>See</u> <u>Liberal v. Estrada</u>, 632 F.3d 1064, 1080-81 (9th Cir. 2011). However, even a cursory review of the transcript quoted above reveals that

---

[1]Harassment is a Class B misdemeanor: "A person commits the crime of harassment if the person intentionally: Harasses or annoys another person by: (A) Subjecting such other person to offensive physical contact; or (B) Publicly insulting such other person by abusive words or gestures in a manner intended and likely to provoke a violent response." Or. Rev. Stat. § 166.065(1)(a), (3).

Menacing is a Class A misdemeanor: "A person commits the crime of menacing if by word or conduct the person intentionally attempts to place another person in fear of imminent serious physical injury." Or. Rev. Stat. § 163.190(1), (2).

31     - OPINION AND ORDER

any unnecessary extension of the investigation was caused by plaintiff, not by Troopers Graves or Vu. See, e.g., Crowley Aff. Ex. 2 at 2-20.[2] Plaintiff's confrontational manner, interruptions, and his refusal to answer questions prevented the troopers and other law enforcement officers from obtaining information necessary to investigate the harassment complaint. At the beginning of the encounter, Trooper Vu vainly attempted to obtain plaintiff's name and identification and question him about his activities, including any recent consumption of alcohol and plaintiff's reasons for contacting co-workers. Other officers likewise attempted to obtain relevant information from plaintiff to confirm or refute the harassment/menacing allegation. Compare Liberal, 632 F.3d at 1081 (officers "were not waiting for investigatory checks to be run or asking Plaintiff questions that would confirm or dispel their suspicions quickly (or at all)"). Once Trooper Vu and other officers were able to obtain information from plaintiff and question other witnesses, he was given an exclusion notice and released. While plaintiff may "defend" his rights, he cannot complain when his own combativeness causes delay in an officer's justified questioning of him.

Finally, plaintiff argues that Trooper Vu falsely stated that he smelled alcohol on plaintiff's breath as a ruse to detain plaintiff. Even if plaintiff's assertion created a disputed issue of fact, it is not material. As explained above, Trooper Vu had reasonable suspicion to detain and question plaintiff for possible harassment or menacing, and any extension of the detention was caused by plaintiff's actions, not Trooper Vu's suspicions of intoxication. Therefore, Troopers Graves and Vu are entitled to summary judgment on plaintiff's Fourth Amendment and false arrest claims.[3]

---

[2]Plaintiff does not dispute the accuracy of the transcript.

[3]Troopers Grave and Vu also maintain that the State of Oregon must be substituted as the proper defendant with respect to plaintiff's state law claim of false arrest, as their actions were within the scope of their employment duties. Or. Rev. Stat. § 30.265(1), (2). If the State of

32     - OPINION AND ORDER

## 2. Free Speech Claims

In his Complaint, plaintiff alleges that Troopers Graves and Vu arrested him based on his protected speech of informing former co-workers of his termination. See, e.g., Lacey v. Maricopa County, 649 F.3d 1118, 1132-33 (9th Cir. 2011). For the reasons set forth above, I find that Troopers Graves and Vu lawfully detained plaintiff based on the harassment complaint and their encounter with plaintiff. No credible evidence suggests that plaintiff was detained because of protected speech. In fact, it appears that Graves and Vu were unaware of the nature or content of plaintiff's speech until they were able to investigate. Thus, at minimum, Graves and Vu are entitled to qualified immunity on this claim, as their conduct in these circumstances did not violate plaintiff's clearly established First Amendment rights of which a reasonable officer would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Orin v. Barclay, 272 F.3d 1207, 1216-17 (9th Cir. 2001).

In his response to their motion for summary judgment, plaintiff maintains that Graves and Vu "chose to punish him for the content of his speech by securing his exclusion" from the OSU campus. Pl.s' Response at 2. However, Graves and Vu did not issue the Exclusion Notice, and the Exclusion Notice was upheld by defendant Rogers, not Graves or Vu. Regardless, as set forth below, plaintiff's exclusion resulted from his conduct, not his speech.

## B. Defendant Rogers

### 1. Free Speech Claim

Plaintiff alleges Rogers excluded plaintiff from OSU based on plaintiff's complaints

---

Oregon is substituted, plaintiff's claim against the State is precluded in federal court under the Eleventh Amendment. See Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 540-542 (2002); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-100, 120 (1984). Plaintiff did not respond to this argument. Regardless, plaintiff's false arrest claim fails on the merits.

regarding his termination, in violation of his First Amendment rights. However, plaintiff offers no credible evidence that he was excluded from campus based on his speech rather than his conduct. Plaintiff does not contest that his former co-workers informed officers that plaintiff confronted them as they arrived for work on the OSU campus and made them feel uncomfortable and intimidated, nor does plaintiff dispute that Rogers relied on those reports in making his decision. Graves Aff., Ex. 5; Fletcher Decl. Ex. 5. "While the OSU campus may be open to the public, it does not follow that the University must allow all members of the public onto its premises regardless of their conduct." Souders v. Lucero, 196 F.3d 1040, 1044 (9th Cir. 1999). In fact, plaintiff himself admits he was "confrontational" with officers, a fact that was also included in the officers' reports. Fletcher Decl. Ex. 1 at 1, 4, 6-9; id. Ex. 4 at 1. Thus, no credible evidence remotely suggests that Rogers' denial of plaintiff's appeal was based on plaintiff's complaints about GCA or the content of his discussion with his former co-workers.

Even if an issue of fact existed as to whether plaintiff's speech contributed to Rogers's decision, I find that Rogers is entitled to qualified immunity. Given the substance of the reports relied on by Rogers, his denial of plaintiff's appeal did not violate plaintiff's clearly established First Amendment rights of which a reasonable university official would have known. See Pearson, 555 U.S. at 231; Souders, 196 F.3d at 1044-45.

### 2. Due Process Claim

Plaintiff next alleges that Rogers deprived him of his liberty interest to "utilize and be present upon the property of the State of Oregon without due process of law" by failing to respond "promptly" to plaintiff's appeal and "dismiss the said order." Compl. at ¶ 9. Even if plaintiff alleged a protected liberty interest, due process requires notice and the opportunity to be heard, and plaintiff

34    - OPINION AND ORDER

received both. See Sec. & Exch. Comm'n v. McCarthy, 322 F.3d 650, 659 (9th Cir. 2003). It is undisputed that Rogers responded to plaintiff's appeal and denied it. To the extent plaintiff contends that a particular form of response was required, such a claim does not establish a violation of his federal due process rights. Notably, plaintiff did not respond to Rogers's motion regarding this claim, and summary judgment is granted.

### 3. Intentional Infliction of Emotional Distress Claim

Finally, plaintiff alleges intentional infliction of emotional distress against Rogers based on his denial of plaintiff's appeal of the Exclusion Notice. Rogers argues that OSU must be substituted as the proper defendant under the Oregon Tort Claims Act, and that Eleventh Amendment immunity bars plaintiff from suing OSU in federal court. See Or. Rev. Stat. § 30.265(1), (2); See Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 540-542 (2002); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 97-100, 120 (1984). Plaintiff concedes dismissal is appropriate.

### IV. CONCLUSION

Defendants' Motions for Summary Judgment (docs. 15, 20) are GRANTED. The Clerk is directed to enter Judgment accordingly.

IT IS SO ORDERED.

DATED this 4th day of June, 2012.

_____

Ann Aiken
United States District Judge

35    - OPINION AND ORDER